942 So.2d 983 (2006)
Sherman DORSEY, Appellant,
v.
STATE of Florida, Appellee.
No. 5D05-1310.
District Court of Appeal of Florida, Fifth District.
December 1, 2006.
*984 James S. Purdy, Public Defender, and Michael S. Becker, Assistant Public Defender, Daytona Beach, for Appellant.
Charles J. Crist, Jr., Attorney General, Tallahassee, and Carmen F. Corrente, Assistant Attorney General, Daytona Beach, for Appellee.
EVANDER, J.
Dorsey was charged in Count I of his indictment with first degree felony murder with the underlying felony being aggravated child abuse and in Count II with the felony of aggravated child abuse. He was convicted after a jury trial on both these counts.[1] His primary argument on appeal is that the felony murder conviction must be set aside pursuant to Brooks v. State, 918 So.2d 181 (Fla.2005), cert. denied, ___ U.S. ___, 126 S.Ct. 2294, 164 L.Ed.2d 820 (2006). We disagree.
In Brooks, the defendant killed an infant child by a single act of stabbing the child. Brooks argued the state was precluded from relying on the felony murder statute[2] to prove first degree murder because the act constituting the underlying felony of aggravated child abuse was the identical act which caused the child's death. Our supreme court agreed, finding "the act constituting the aggravated child abuse merged into the infant's homicide." Brooks at 198.
In its opinion, the court found its prior decision of Lukehart v. State, 776 So.2d 906 (Fla.2000), cert. denied, 533 U.S. 934, 121 S.Ct. 2561, 150 L.Ed.2d 726 (2001) and the Fourth District Court of Appeal's decision of Mapps v. State, 520 So.2d 92 (Fla. 4th DCA), rev. denied, 528 So.2d 1182 (Fla.1988), to be distinguishable. In Lukehart, the defendant was convicted of first degree felony murder and aggravated child abuse. The qualifying felony was aggravated child abuse. The court upheld both convictions, noting:
Finally, in aggravated child abuse cases there is ordinarily overt physical violence which is directed towards a child. By specifically including the category of aggravated child abuse within the felony murder statute, the legislature clearly contemplated that both charges can be *985 made where violence directed at the child results in the death of the child.
Lukehart at 923.
The court further noted the jury's verdict was supported by the medical examiner's testimony that the baby died of injuries caused by blunt trauma from five blows to her head. Lukehart at 922.
In Mapps, the defendant was convicted of first degree felony murder after a non-jury trial. The underlying felony specified in the indictment was aggravated child abuse. The only facts set forth in Mapps were: "[A] ten month-old child died of a fractured skull, caused by the defendant throwing, shaking, or striking the child." Mapps at 93. In affirming the defendant's felony murder conviction, our sister court held:
It is obvious that our legislature did not intend that the felonies specified in the felony-murder statute merge with the homicide to prevent conviction of the more serious charge of first-degree murder.
Mapps at 93.
In analyzing Lukehart and Mapps, the Brooks court acknowledged that generally aggravated child abuse can be a separate charge and also serve as the underlying felony in a felony-murder charge. Brooks at 198. Therefore, it appears the Brooks holding is limited to those unique cases in which there is a single instantaneous act by the defendant which constitutes both the aggravated child abuse and the act causing the child's death.
In the present case, the facts supported a finding that the aggravated child abuse committed by Dorsey was not a single instantaneous act. Dorsey had been the almost four month-old child-victim's sole caregiver for approximately eight hours. When the child's mother left the victim in Dorsey's care, the child was healthy. When the mother returned, the child was gasping for breath with her eyes rolling in her head. Paramedics arrived shortly thereafter. The paramedics found the child was in respiratory distress with a very rapid heartbeat. She did not respond to stimuli. Various tests, including a CT scan, were performed on the child after her arrival at the hospital. The scan revealed a swelling of the brain. Two urine samples tested positive for cocaine.
Dr. John Tilelli, an intensive care physician and toxicologist, was the child's primary treating physician after her arrival at Arnold Palmer Hospital for Children and Women. Dr. Tilelli testified the victim suffered from some of the most severe retinal hemorrhaging he had seen in his practice. The child's other conditions  cerebral swelling, diffuse axonal injury and intracranial bleeding led Dr. Tilelli "to the inescapable conclusion" that the child was a victim of shaken baby syndrome. In his opinion, the injury occurred as a result of the child's "very vulnerable brain" being rapidly accelerated and decelerated and literally torn from the spinal cord.
Dr. Tilelli's opinion was supported by the medical examiner. The medical examiner found areas of hemorrhaging in the brain and in the retinas. The medical examiner concluded the cause of death was subdural hemorrhaging or hematoma due to shaken baby syndrome.
Additionally, there was evidence the victim had suffered a torn frenulum  the small web of tissue under the tongue. The evidence was that the most common way a torn frenulum occurs is from the forceful intrusion of an object, such as a bottle. Although the torn frenulum was not causally related to the child's death and was not alleged to have resulted from aggravated child abuse, such evidence would support a conclusion that the child had been roughly handled for more than a *986 single moment in time. Indeed, we question whether shaking a child to death could ever be considered a single instantaneous act.
We conclude the facts in this case are readily distinguishable from Brooks and affirm Dorsey's convictions for first degree felony murder and aggravated child abuse.
We write to address one other issue. The record reflects the prosecutor made several improper statements in her closing argument, including demanding justice for the victim and referencing matters not in evidence. These types of argument have previously been condemned by our court. Servis v. State, 855 So.2d 1190 (Fla. 5th DCA 2003); Thornton v. State, 767 So.2d 1286 (Fla. 5th DCA 2000); Blackburn v. State, 447 So.2d 424 (Fla. 5th DCA 1984). Indeed, this prosecutor has previously been criticized by this court for improper closing argument. Fullmer v. State, 790 So.2d 480 (Fla. 5th DCA 2001).
In this case, the able trial judge correctly sustained defense objections to the improper statements made by the prosecutor and appropriately instructed the jury to disregard the prosecutor's comments. The trial court acted within its discretion in denying Dorsey's motions for mistrial. But for the manner in which the trial court dealt with these improper comments by the prosecutor, our decision might have been different. It is difficult to understand why an experienced prosecutor would jeopardize this case with her improper argument. Counsel is reminded of her obligation to present argument so that the cause may be decided according to the evidence and the law.
AFFIRMED.
GRIFFIN and PALMER, JJ., concur.
NOTES
[1] Dorsey was also convicted of culpable negligence and possession of cocaine less than 28 grams. We affirm the convictions on these counts without further discussion.
[2] § 782.04(1)(a)2, Fla. Stat.