ROBERTS, J.
 

 The appellant, Amanda Lewis, was charged and convicted of aggravated child abuse and first-degree felony murder in the drowning death of her seven-year-old daughter. She raises four issues on appeal, only one of which merits discussion. She argues that her convictions must be set aside because the merger doctrine precludes the use of aggravated child abuse as the underlying felony in a felony murder charge if only a single act of abuse led to the child’s death. We disagree and affirm.
 

 At English common law, the crime of felony murder occurred when a person caused the death of another in the commission of any felony without regard to the dangerousness of the underlying felony. Wayne R. LaFave, Substantive Criminal Law § 14.5 (2d ed. 2003). The felony murder rule effectively relieves the prosecution of the need to prove the requisite
 
 mens rea
 
 to obtain a first-degree murder conviction. As the number of felonies increased to include those that were
 
 malum prohibitum
 
 rather than
 
 malum in se,
 
 it became necessary to limit the scope of the felony murder rule to avoid the harshness of convicting a defendant of murders which flowed from felonies such as filing a false tax return or embezzling.
 
 Id.
 

 One such limitation on the scope of the felony murder rule is the merger doctrine. The leading case explaining the application of the merger doctrine to the felony murder rule is
 
 People v. Ireland,
 
 70 Cal.2d 522, 75 Cal.Rptr. 188, 450 P.2d 580 (1969). In
 
 Ireland,
 
 a felony murder instruction was given where a man shot and killed his wife — the underlying felony being assault with a deadly weapon.
 
 Id.
 
 at 589. The court held that a “felony-murder instruction may not properly be given when it is based upon a felony which is an integral part of the homicide and which the evidence produced by the prosecution shows to be an offense included
 
 in fact
 
 within the offense charged.”
 
 Id.
 
 at 590.
 

 The rationale behind the merger doctrine is to ensure that varying degrees of murder, manslaughter, and other homicides remain distinct categories. Douglas Van Zanten,
 
 Felony Murder, the Merger Limitation, and Legislative Intent in State v. Heemstra: Deciphering the Proper Role of the Iowa Supreme Court in Interpreting Iowa’s Felony-Murder Statute,
 
 93 Iowa L. Rev. 1565, 1574 (2008) (citing
 
 State v. Branch,
 
 244 Or. 97, 415 P.2d 766, 767 (1966)). Without the merger doctrine, all felonious assaults that result
 
 *185
 
 ed in death would be bootstrapped up to first-degree murder regardless of whether the requisite
 
 mens rea
 
 existed.
 

 Classifying the crime of murder into varying degrees is a statutory creation and is not required by the constitution. The legislature could, if it so desired, create only one crime of murder. Thus, in states where the felonies that are predicate crimes for the felony murder rule are specifically enumerated by statute and no catch-all category reminiscent of the common law felony murder rule exists, the merger doctrine is not appropriate. Van Zanten, 93 Iowa L. Rev. at 1576 (citing
 
 State v. Godsey,
 
 60 S.W.3d 759, 774-75 (Tenn.2001)).
 

 In
 
 Godsey,
 
 the defendant was convicted of first-degree felony murder during the perpetration of aggravated child abuse. 60 S.W.3d at 764, 769. The Court of Criminal Appeals affirmed the conviction.
 
 Id.
 
 at 764, 770. On appeal to the Supreme Court of Tennessee, the defendant argued that the merger doctrine precluded a felony murder conviction based on aggravated child abuse.
 
 Id.
 
 at 774. The court disagreed, explaining
 

 Courts have generally declined to hold that the merger doctrine implicates any principle of constitutional law. Instead, courts have viewed the merger doctrine as a principle for discerning legislative intent and, more specifically, as a principle that preserves “some meaningful domain in which the Legislature’s careful graduation of homicide offenses can be implemented.” Accordingly, the merger doctrine has not been widely accepted. The doctrine has been applied largely in those states where the felony murder statute fails to specifically list the felonies capable of supporting a felony murder conviction. Where a “legislature explicitly states that a particular felony is a predicate felony for felony-murder, no ‘merger’ occurs.”
 

 Id.
 
 at 774-75 (citations and footnote omitted).
 

 Another limitation on the scope of the felony murder rule, and the one used in this state, is to apply the rule only to those felonies specifically enumerated by statute. In Florida, a defendant may be convicted of first-degree murder if the unlawful killing of a human being is: 1) perpetrated from a premeditated design to cause the death of a human being; 2) caused by a person perpetrating certain enumerated felonies or 3) caused by the distribution of certain specified controlled substances.
 
 See
 
 § 782.04(l)(a)l.-3, Fla. Stat. (2007). The second category is commonly referred to as the “felony murder statute,” which provides:
 

 (l)(a) The unlawful killing of a human being:
 

 * * *
 

 2. When committed by a person engaged in the perpetration of, or in the attempt to perpetrate, any:
 

 a. Trafficking offense prohibited by s. 893.135(1),
 

 b. Arson,
 

 c. Sexual battery,
 

 d. Robbery,
 

 e. Burglary,
 

 f. Kidnapping,
 

 g. Escape,
 

 h. Aggravated child abuse,
 

 i. Aggravated abuse of an elderly person or disabled adult,
 

 j. Aircraft piracy,
 

 k. Unlawful throwing, placing, or discharging of a destructive device or bomb,
 

 l. Carjacking,
 

 m. Home-invasion robbery,
 

 n. Aggravated stalking,
 

 
 *186
 
 o. Murder of another human being,
 

 p. Resisting an officer with violence to his or her person,
 

 q. Felony that is an act of terrorism or is in furtherance of an act of terrorism; or
 

 * * *
 

 is murder in the first degree and constitutes a capital felony, punishable as provided in s. 775.082.
 

 § 782.04(l)(a)2., Fla. Stat. (2007) (emphasis added).
 

 The appellant urges us to reverse her convictions of aggravated child abuse and felony murder on the basis of
 
 Brooks v. State,
 
 918 So.2d 181 (Fla.2005). In that case, Brooks was charged with two counts of first-degree murder on the alternative theories of premeditated murder and felony murder with a weapon for the stabbing deaths of a woman and her three-month-old daughter.
 
 Id.
 
 at 186, 217. The underlying felony for the felony murder theory was aggravated child abuse as provided in section 782.04(l)(a)2.h. Brooks was not charged separately with aggravated child abuse.
 
 Id.
 
 at 217. Upon retrial, Brooks was convicted by a general jury verdict of two counts of first-degree murder and sentenced to death.
 
 Id.
 
 at 187, 217.
 

 On direct appeal to the Florida Supreme Court, Brooks argued,
 
 inter alia,
 
 that the merger doctrine precluded the use of aggravated child abuse as the underlying felony.
 
 Id.
 
 at 197-98. The Court agreed, stating
 

 [H]ad Brooks been charged with aggravated child abuse, he could not have been convicted of that crime.... In light of the fact that Brooks delivered a single stabbing blow that resulted in [the child’s] death, the act constituting the aggravated child abuse merged into the infant’s homicide.
 

 [[Image here]]
 

 [T]he instant case involved the single act of stabbing which caused a single injury. In a case such as this where ... a single act caused both an aggravated battery and a homicide, aggravated battery cannot then serve as the underlying felony of the felony murder charge. It makes no difference that Brooks was not charged or convicted of aggravated child abuse because that crime, under these facts, merges with the homicide itself. In the instant matter, the action underlying the aggravated child abuse factor constituted the fatal stab wound that killed [the child]. Because there is no separate offense of aggravated child abuse, that crime cannot logically serve as the underlying felony in a felony murder charge.
 

 Id.
 
 at 198-99 (citations omitted). Inexplicably, however, the Court ultimately affirmed Brooks’ convictions.
 
 Id.
 
 at 211.
 

 When a court makes a pronouncement of law that is ultimately immaterial to the outcome of the case, it cannot be said to be part of the holding in the case. In
 
 Brooks,
 
 the Court’s statements that aggravated child abuse cannot serve as the underlying felony in a felony murder charge if only a single act led to the child’s death was not a holding in the case. The statements had no effect on the Court’s decision to affirm Brooks’ convictions. Consequently, in the context of the instant case, the statements are
 
 dicta
 
 and not binding on this court.
 

 Moreover, the felony murder statute specifically provides that aggravated child abuse is a predicate offense for felony murder. The plain, unambiguous language of the statute demonstrates that the legislature intended that a defendant who kills a child during the perpetration of the crime of aggravated child abuse may be charged and convicted of both aggra
 
 *187
 
 vated child abuse and felony murder, regardless of the number of acts of abuse which caused the child’s death. In his dissent in
 
 Brooks,
 
 Justice Lewis explained,
 

 The plain text of the statute ... affords no indication that the Legislature intended to exclude application of the felony murder doctrine in those instances of aggravated battery on a child that involve a solitary stab wound, a lone blow to the head, one gunshot wound, or any other single act of violence ... [T]he felony murder statute clearly captures all instances of aggravated child abuse, regardless of whether a single violent act constitutes the abuse and simultaneously causes the child’s death in this context.... The plain statutory language reflects a policy decision to protect the children of this state by subjecting those whose acts of child abuse produce death to the highest possible penalty.
 

 918 So.2d at 219 (Lewis, J., concurring in part and dissenting in part) (footnote omitted).
 

 Assuming
 
 arguendo
 
 that the statements in
 
 Brooks
 
 are not dicta and are applicable to the instant case, we would still affirm. Based on the child’s injuries and the manner of her death, it is clear that more than a single act of abuse led to her death. The appellant’s actions in holding her child beneath the surface of a swimming pool long enough to produce unconsciousness and then death cannot be considered a single act. Indeed, we question whether drowning a child could ever be considered a single act.
 
 See e.g., Dorsey v. State,
 
 942 So.2d 983 (Fla. 5th DCA 2006) (questioning whether shaking a child could ever be considered a single act).
 

 Nevertheless, in light of the seriousness of the issue, we certify the following question to be one of great public importance:
 

 WHETHER
 
 BROOKS V. STATE,
 
 918 So.2d 181 (Fla.2005), HOLDS THAT AGGRAVATED CHILD ABUSE CANNOT SERVE AS THE UNDERLYING FELONY IN A FELONY MURDER CHARGE IF ONLY A SINGLE ACT OF ABUSE LED TO THE CHILD’S DEATH.
 

 AFFIRMED.
 

 KAHN and BENTON, JJ., concur.