WEBSTER, J.
In this direct criminal appeal, appellant seeks review of his convictions and sentences for first-degree felony murder and aggravated child abuse, arguing that he could not be convicted of those offenses because of the common-law “merger doctrine.” Because we conclude that we are constrained by precedent from our supreme court to apply the merger doctrine on the facts of this case, we reverse, and remand with directions that the trial court set aside the convictions for felony murder and aggravated child abuse and adjudicate appellant guilty of second-degree murder (as to which the jury also found him guilty) and sentence him for that offense. We also certify to the supreme court a question we believe to be of great public importance.
I.
Appellant was indicted by a grand jury for first-degree felony murder and aggravated child abuse. As to the felony-murder charge, the indictment alleged that appellant killed the victim while committing aggravated child abuse by slapping the victim into a wall. The allegation was the same for the aggravated child abuse charge. The state subsequently filed an information against appellant charging second-degree murder based on the same allegation as had been made in the indictment. At a hearing on the state’s motion to consolidate the cases, the state explained that it had filed the information “out of an abundance of caution” because *1045 of a Florida Supreme Court decision which the prosecutor said “st[ood] for the proposition that if one single act is the basis for the felony murder ..., then it’s not felony murder.” The trial court granted the motion to consolidate, and the case was tried to a jury.
The state played for the jury a portion of a statement made by appellant in which appellant said that he had slapped the two-year-old victim, who was standing on a coffee table, on the back of the head with such force that the victim fell, hitting his head on the concrete wall. The medical examiner testified that appellant’s version of what had happened was consistent with the findings on autopsy, and that the force of the slap to the back of the victim’s head would have been sufficient to cause death.
At the close of the state’s case, appellant filed a written motion for judgment of acquittal. In it, he argued that, in Brooks v. State, 918 So.2d 181 (Fla.2005), the court had held that the merger doctrine precludes conviction for felony murder when the predicate aggravated child abuse consists of a single act. According to appellant, given the evidence in the case, the greatest offense of which he could be convicted was second-degree murder. The trial court initially granted the motion as to the felony-murder charge. However, following additional argument, the trial court reversed itself, agreeing with the state that Brooks did not preclude a conviction for felony murder, and denied the motion.
The jury returned verdicts finding appellant “guilty as charged” of first-degree felony murder, second-degree murder and aggravated child abuse. At sentencing, the trial court adjudicated appellant guilty of first-degree felony murder and aggravated child abuse, and sentenced him accordingly. Because of double jeopardy concerns, all agreed that appellant should not be adjudicated guilty of, or sentenced for, second-degree murder. This appeal follows.
II.
We would normally begin our analysis with an examination of Brooks v. State, 918 So.2d 181 (Fla.2005), to determine what, if anything, it has to say relevant to the issue raised by this appeal. However, another panel of this court has already conducted such an examination.
A.
In Lewis v. State, 34 So.3d 183 (Fla. 1st DCA 2010), the appellant had been convicted of aggravated child abuse and first-degree felony murder as a result of the drowning death of her daughter. Id. at 184. On appeal, she made the same argument that appellant makes here — that “her convictions must be set aside because the merger doctrine precludes the use of aggravated child abuse as the underlying felony in a felony murder charge if only a single act of abuse led to the child’s death.” Id. As does appellant here, Lewis relied principally on Brooks v. State, which she contended was controlling.
As the Lewis panel explained, “[a]t ... common law, the crime of felony murder occurred when a person caused the death of another in the commission of any felony....” Id. The merger doctrine was a common-law limitation on the crime of felony murder. Id. “Without [it], all felonious assaults that resulted in death would be bootstrapped up to first-degree murder regardless of whether the requisite mens rea existed.” Id. at 184-85. See also Robles v. State, 188 So.2d 789, 792 (Fla.1966) (discussing the doctrine, but concluding that it had no role to play in Florida because, at the time, Florida’s felony-murder statute “limit[ed] the felony-murder rule to homicides committed in the perpe *1046 tration of specified felonies, not including assault in any of its forms”).
B.
The Lewis panel next directed its attention to the supreme court’s Brooks decision. As the panel noted, Brooks had been charged with the murders of a mother and her infant daughter. Id. at 186. Each count charged first-degree murder, committed either with premeditation or in the commission of the felony of aggravated child abuse. Id. Brooks was not separately charged with aggravated child abuse. Id. The jury returned a general verdict finding Brooks guilty as charged. Id. The trial court adjudicated Brooks guilty of two counts of first-degree murder and, following the jury’s recommendation, sentenced Brooks to death. Id.
In Brooks, the court characterized Brooks’ argument as follows:
[Brooks] contends that because the single act of stabbing [the child] formed the basis of both the aggravated child abuse aggravating factor under section 921.141(5)(d) of the Florida Statutes and the first-degree felony murder charge, the court should have found that the aggravated child abuse allegation “merged” with the more serious homicide charge. Thus, according to Brooks, the State should have been totally precluded from invoking the felony murder doctrine and should have been limited to proving first-degree murder only on the theory of premeditation for both murders. Brooks does not merely attack the use of the underlying felony as an aggravator; he asserts that the state is prohibited from using aggravated child abuse as the felony crime.
Brooks, 918 So.2d at 197-98. Four members of the court (Chief Justice Pariente, and Justices Anstead, Quince and Cantero) agreed. Id. at 198, 211. The four-member majority explained its conclusion thus:
Mills [v. State, 476 So.2d 172 (Fla.1985) ] clearly bars a conviction of aggravated battery where a single act of aggravated battery also causes a homicide. This determination is based on the fact that the aggravated battery has merged into the homicide. Likewise, had Brooks been charged with aggravated child abuse, he could not have been convicted of that crime. That is because aggravated child abuse is an aggravated battery, the only difference being that the victim is a child.... In light of the fact that Brooks delivered a single stabbing blow that resulted in [the child’s] death, the act constituting the aggravated child abuse merged into the infant’s homicide.
... [T]he instant case involved the single act of stabbing which caused a single injury. In a case such as this where the Mills rule prevents a conviction of aggravated battery because a single act caused both an aggravated battery and a homicide, aggravated battery cannot then serve as the underlying felony of the felony murder charge. It makes no difference that Brooks was not charged or convicted of aggravated child abuse because that crime, under these facts, merges with the homicide itself. In the instant matter, the action underlying the aggravated child abuse factor constituted the fatal stab wound that killed [the child]. Because there is no separate offense of aggravated child abuse, that crime cannot logically serve as the underlying felony in a felony murder charge.
Id. at 198-99.
After noting the above language from Brooks, the Lewis panel concluded that it was not binding on them because the discussion was “ultimately immaterial to the *1047 outcome of the case” and, therefore, constituted dicta. Lewis, 34 So.3d at 186.
C.
To the extent that a discussion such as that of Brooks in the Lewis decision is necessary to the panel’s decision, it is binding on us unless overruled either by this court, sitting en banc, or a higher court. See, e.g., Carr v. Carr, 569 So.2d 903, 903 (Fla. 4th DCA 1990) (stating that “we must follow the law of our own cases until we are overruled or until we recede from them”). However, if it is unnecessary, it constitutes dicta, and is not binding on other panels. See, e.g., Conway v. Sears, Roebuck & Co., 185 So.2d 697, 699 (Fla.1966). In the penultimate paragraph of its opinion, the Lewis panel said:
Assuming arguendo that the statements in Brooks are not dicta and are applicable to the instant case, we would still affirm. Based on the child’s injuries and the manner of her death, it is clear that more than a single act of abuse led to her death.
Lewis, 34 So.3d at 187. We believe it is relatively clear from this language that it was unnecessary for the Lewis panel to reach the question of whether the discussion in Brooks was dicta and that, as a result, the discussion of whether it was or was not dicta is, itself, dicta. Accordingly, the discussion of Brooks in Lewis is not binding on us, and we must conduct our own examination.
D.
While the Lewis panel is correct when it says that the discussion in Brooks “had no effect on the Court’s decision to affirm Brooks’ convictions,” id. at 186, our examination of the opinions in Brooks leads us to conclude that the discussion was necessary to the court’s decision and, therefore, was not dicta.
We candidly acknowledge that the opinions in Brooks (including two on rehearing, there are five), are not models of clarity. However, having spent considerable time parsing the language of those opinions, we are satisfied that, insofar as pertinent to our inquiry, a majority of the court held that it was error . (1) to convict Brooks of felony murder based on a predicate felony of aggravated child abuse, see 918 So.2d at 197-98 (where four members of the court “agree” with what is characterized as Brooks’ contention that “the State should have been totally precluded from invoking the felony murder doctrine and should have been limited to proving first-degree murder only on the theory of premeditation for both murders”), id. at 211 (Par-iente, C.J., concurring in part and dissenting in part) (stating, “I agree with the majority that there could be no crime of aggravated child abuse based on a single stab wound because that .crime merges with the homicide”), id. at 218 (Lewis, J., concurring in part and dissenting in part) (stating that “[t]he majority opinion adopts and endorses Brooks’ view and applies the rule of law established in Mills ... to totally void aggravated child abuse as both a basis for any felony murder conviction and as a statutory aggravator in sentencing ... ”), id. at 221 (Pariente, C.J., dissenting from denial of rehearing) (arguing that reversal of Brooks’ convictions was required because “the general verdict of guilt precludes us from determining whether the jury relied upon the valid premeditated murder theory or the legally invalid felony murder theory”), id. (Lewis, J., dissenting from denial of rehearing) (arguing that, the “majority having reached the conclusion that no underlying felony existed as a matter of law, we must grant Brooks’s motion for rehearing, reverse his convictions, and remand this case for a new trial”); and (2) for the trial court to rely on aggravated child abuse as an *1048 aggravating factor for sentencing purposes, see id. at 199 (where four members of the court state that the trial court “err[ed] in relying on the aggravated child abuse factor in aggravation” of Brooks’ sentences), id. at 202 (where four members of the court characterize as error “reliance in sentencing on the aggravating factor that the murders were committed during the course of an act of aggravated child abuse”), id. at 217 (Pariente, C.J., concurring in part and dissenting in part) (stating, “I concur in the majority’s determination that the underlying felony of aggravated child abuse merges with the homicide for the killing of [the child] with a single stab wound, invalidating the ‘murder in the course of a felony aggravator found by the trial court as to both victims”), id. at 218 (Lewis, J., concurring in part and dissenting in part) (stating that “[t]he majority opinion adopts and endorses Brooks’ view and applies the rule of law established in Mills ... to totally void aggravated child abuse as both a basis for any felony murder conviction and as a statutory aggravator in sentencing ...”), id. at 220-21 (Pariente, C.J., dissenting from denial of rehearing) (stating, “I concurred in the majority’s determination that the aggravated child abuse merged into the felony murder and therefore did not support a separate aggravating circumstance”). However, we conclude, further, that a majority of the court determined these errors were harmless. The majority actually says as much with regard to use of aggravated child abuse as an aggravating factor for sentencing purposes, see id. at 199 (“[t]he trial court’s error in relying on the aggravated child abuse factor in aggravation has no impact on the sentencing determination for either murder” because, even without that factor, “[t]he aggravating factors continue to substantially outweigh any mitigation”), id. at 202 (concluding in its “cumulative error analysis” that “there is no reasonable possibility that” the errors, including “the erroneous reliance in sentencing on the aggravating factor that the murders were committed during the course of an act of aggravated child abuse ... contributed to Brooks’ [sentences]”). While we have been unable to find any direct statement that the majority also concluded that allowing the charges to go to the jury on alternative theories of either premeditated first-degree murder or felony murder was harmless, such a conclusion seems to us inescapable in light of the opinions of Chief Justice Pariente and Justice Lewis dissenting from denial of rehearing. See id. at 220-21 (Pariente, C.J., dissenting from denial of rehearing); id. at 221 (Lewis, J., dissenting from denial of rehearing).
Because we conclude that the discussion in Brooks is necessary to the court’s decision, we conclude, further, that it is not dicta. See Rosa v. State, 35 Fla. L. Weekly D1361, 2010 WL 2430985 (Fla. 2d DCA 2010) (disagreeing with the Lewis panel’s conclusion that the pertinent language in Brooks was dicta). Accordingly, we are obliged to follow it. E.g., Cont’l Assurance Co. v. Carroll, 485 So.2d 406, 409 (Fla.1986); Hoffman v. Jones, 280 So.2d 431, 433-34 (Fla.1973). Because it is clear that the child victim died as the result of a single blow from appellant, we are constrained to reverse appellant’s convictions. However, that does not mean that, while doing so, we may not state our reasons for advocating change. Hoffman, 280 So.2d at 434. In this regard, we are in complete agreement with the Lewis panel that Justice Lewis’ position in Brooks was the better-reasoned one.
E.
As we have already noted, the merger doctrine is a creature of the common law. As such, it must yield to an inconsistent *1049 statute adopted by the legislature. See, e.g., State v. Egan, 287 So.2d 1, 6 (Fla.1973); § 2.01, Fla. Stat. (2007). To the extent pertinent, the felony-murder statute reads: “The unlawful killing of a human being ... [w]hen committed by a person engaged in the perpetration of, or in the attempt to perpetrate, any ... [ajggravat-ed child abuse ... is murder in the first degree and constitutes a capital felony ....” § 782.04(l)(a)2.h„ Fla. Stat. (2007) (emphasis added). We see nothing unclear or ambiguous about this statutory language. It clearly states that “any” aggravated child abuse will support a conviction for felony murder. As Justice Lewis said in Brooks, “[t]he plain text of the statute ... affords no indication that the Legislature intended to exclude application of the felony murder doctrine in those instances of aggravated battery on a child that involve a solitary stab wound, a lone blow to the head, one gunshot wound, or any other single act of violence”; rather, “[t]he plain statutory language reflects a policy decision to protect the children of this state by subjecting those whose acts of child abuse produce death to the highest possible penalty.” 918 So.2d at 219 (footnote omitted). The Lewis panel agreed:
the felony murder statute specifically provides that aggravated child abuse is a predicate offense for felony murder. The plain, unambiguous language of the statute demonstrates that the legislature intended that a defendant who kills a child during the perpetration of the crime of aggravated child abuse may be charged and convicted of both aggravated child abuse and felony murder, regardless of the number of acts of abuse which caused the child’s death.
34 So.3d at 186-87. Accord Rosa v. State, 2010 WL 2430985 (Fla. 2d DCA 2010). Interestingly, the Brooks majority did not address Justice Lewis’ criticism
F.
Accordingly, while we conclude that we are constrained by Brooks to reverse appellant’s convictions, we believe that a proper deference to the legislature’s adoption of section 782.04(l)(a)2.h. requires the conclusion that aggravated child abuse will support a felony-murder conviction, even if the abuse consisted of a single act. We certify the following question, which we believe to be of great public importance, to the supreme court:
DOES BROOKS v. STATE, 918 So.2d 181 (Fla.2005), PRECLUDE A CONVICTION FOR FELONY MURDER BASED ON THE PREDICATE OFFENSE OF AGGRAVATED CHILD ABUSE WHEN THE ABUSE CONSISTS OF A SINGLE ACT, NOTWITHSTANDING THE LANGUAGE OF SECTION 782.04(l)(a)2.h., FLORIDA STATUTES (2007)?
Our resolution of this issue renders appellant’s remaining issue moot.
III.
We reverse appellant’s convictions for first-degree felony murder and aggravated child abuse, and remand with directions that the trial court adjudicate appellant guilty of second-degree murder and sentence him for that offense.
REVERSED and REMANDED, with directions.
PADOVANO, J., concurs; ROWE, J., dissents with opinion.