ROWE, J.,
dissenting.
I respectfully dissent. While I join the majority in certifying the question as one of great public importance, I disagree with the majority’s conclusion that we are constrained by Brooks v. State, 918 So.2d 181 (Fla.2005), to reverse Mr. Sturdivant’s convictions for felony murder and aggravated *1050 child abuse. Nor can I agree that Brooks held that a single act of aggravated child abuse may not serve as the underlying felony in a felony murder conviction. See id. at 197-99. As acknowledged by the majority opinion, this court very recently in Lewis v. State, 34 So.3d 183, 186-87 (Fla. 1st DCA 2010), reached the opposite conclusion, finding that the relevant language in Brooks was merely dicta and that a single act of aggravated child abuse may, under the plain language of the murder statute, serve as a predicate crime for felony murder. The prior decision in Lewis is correct. The language in Brooks was merely dicta and, therefore, not binding precedent. Id. at 186. Because the Legislature has clearly expressed that a single act of aggravated child abuse may serve as both the predicate for a felony murder conviction and for the underlying felony itself, I would affirm Mr. Sturdivant’s judgment and sentences for felony murder and aggravated child abuse.

Analysis

I. The Contested Language in Brooks was Not a Holding of the Case.
A. Language Not Necessary to a Court’s Decision is Mere Dicta.
I disagree with the majority’s conclusion that the language voiding aggravated child abuse as a predicate crime for felony murder is a holding of the case. Although the majority cites a number of statements from Brooks to claim that this language is a holding, simply referring to such language as a holding does not make it so: Lewis v. State, 623 So.2d 1205, 1208 (Fla. 4th DCA 1993) (Farmer, J., dissenting) (quoting New Port Largo, Inc. v. Monroe County, 985 F.2d 1488 (11th Cir.1993) (Edmondson, J., specially concurring)).
[N]o matter how often or how plainly a judicial panel may put in its opinions the “we hold X,” “X” is not law and is not binding on later panels unless “X” was squarely presented by the facts of the case and was a proposition that absolutely must have been decided to decide the concrete case then before the court.
Indeed, as then-Judge Canady observed in his special concurrence in State v. Yule, 905 So.2d 251, 259 (Fla. 2d DCA 2005), the doctrine of stare decisis does not require courts to “treat every broad statement of principle made in a prior decision as establishing a binding rule.” In discussing the distinctions between holding and dicta, Judge Canady referred to a law review article in which dicta is defined as a statement not related to the majority’s “chosen decisional path or paths of reasoning”:
A holding consists of those propositions along the chosen decisional path or paths of reasoning that (1) are actually decided, (2) are based upon the facts of the case, and (3) lead to the judgment. If not a holding, a proposition stated in a case counts as dicta.
Id. at 259 n. 10 (quoting Michael Abramowicz & Maxwell Stearns, Defining Dicta, 57 Stan. L. Rev. 953,1065 (2005)). It is axiomatic that language that is not a holding is dicta. Only that language that is “clearly critical to the outcome” of the case may be considered a holding of the case. See Bellsouth Telecomms., Inc. v. Church & Tower of Fla., Inc., 930 So.2d 668, 673 (Fla. 3d DCA 2006) (“[Ojur reliance upon Witt was clearly critical to the outcome in Carrousel, and, therefore, not dictum.”). Where a statement does not directly control the outcome, it is mere dicta and without the force of precedent. See State ex rel. Biscayne Kennel Club v. Bd. of Bus. Regulation of Dep’t of Bus. Regulation, 276 So.2d 823, 826 (Fla.1973); Estate of Williams ex rel. Williams v. Tandem Health Care of Fla., Inc., 899 So.2d 369, 374 (Fla. 1st DCA 2005).
*1051 B. The Contested Language in Brooks is Not Necessary to the Outcome of That Case.
The contested language of the Brooks majority opinion, that a single act of aggravated child abuse cannot serve as the predicate for felony murder, was not necessary to the outcome of that case; • if it was a holding, it would have required reversal of Brooks’s conviction. Although this is precisely what Justice Lewis urged the court to do on rehearing, i.e., vacate Brooks’s conviction, the majority declined to do so. Brooks, 918 So.2d at 221-24. Under well established precedent, reversal is required where a general verdict is based upon multiple grounds, one of which is unsupportable, and where it is impossible to tell the ground upon which the jury based its verdict. See, e.g., Yates v. United States, 354 U.S. 298, 312, 77 S.Ct. 1064, 1 L.Ed.2d 1356 (1957), overruled cm, other grounds by Burks v. United States, 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978); accord Delgado v. State, 776 So.2d 233, 242 (Fla.2000) (remanding for a new trial where the theory of felony murder was legally inadequate), superseded on other grounds by statute, § 810.015, Fla. Stat. (2001); Mackerley v. State, 777 So.2d 969, 969 (Fla.2001).
In Brooks, the jury convicted the defendant of first-degree murder. Because a general verdict was rendered, the jury did not have the option to designate whether its verdict was based on premeditated murder or felony murder. Had the majority’s discussion of aggravated child abuse as a predicate for felony murder been essential to the outcome of the case, reversal would have been required. However, only Justices Pariente, Anstead, and Lewis voted to grant rehearing to reverse the murder conviction. The remaining four justices affirmed the murder conviction and denied rehearing. Thus, the discussion regarding child abuse and felony murder could only be limited to the consideration of aggravated child abuse as a statutory aggravator at sentencing — not the underlying conviction for felony murder. Because the language at issue in Brooks is not only unnecessary, but in fact at odds with the outcome, it cannot be a holding and must instead be treated as dicta.
II. If a Single Act of Aggravated Child Abuse Cannot Serve as the Predicate for a Felony Murder, a Conviction by General Verdict Would Not be Harmless Error.
A. A Conviction by General Verdict is Erroneous When it Rests Upon Multiple Bases, One of Which is Legally Invalid.
While conceding in its analysis that the Lewis panel was correct that the discussion in Brooks had no effect on the Court’s decision to affirm Brooks’s convictions, the majority, nevertheless, reaches the “inescapable conclusion” that the Brooks court found harmless any error by the trial court in allowing the charges to go to the jury on alternative theories of either premeditated first-degree murder or felony murder. This conclusion is far from “inescapable.” In fact, it is contrary to well-settled law.
It cannot be harmless error to convict a defendant by general verdict for first-degree murder on alternate theories of premeditation and felony murder when the felony murder theory is legally invalid, even where there is evidence in the record of premeditation. See, e.g., Mackerley v. State, 111 So.2d 969, 969 (Fla.2001). Had the Brooks majority actually determined that a single act of aggravated child abuse could not serve as the basis for a felony murder conviction, it could not have then concluded that Brooks’s conviction by general verdict was harmless. Instead, such a *1052 determination would have required reversal.
B. The Brooks Majority Did Not Hold that Brooks’s Conviction by General Jury Verdict Was Error Based on the Principle that Aggravated Child Abuse Could Not Serve as the Predicate for Felony Murder.
The cumulative error analysis performed in Brooks refutes a conclusion that the Brooks majority regarded as harmless error Brooks’s conviction by general jury verdict based on a legally invalid theory of felony murder. When conducting a cumulative error analysis, the reviewing court identifies all the known errors in a trial which individually were considered harmless, and then determines whether in the aggregate the errors deprived the defendant of a fair trial. See, e.g., Suggs v. State, 928 So.2d 419, 441 (Fla.2005); 5 Am.Jur.2d Appellate Review § 668 (2010). Further, in a cumulative-error analysis the reviewing court aggregates only actual errors to determine a cumulative effect. 1 Federal Trial Handbook Criminal § 2:35 (4th ed. 2009). In affirming Brooks’s murder conviction, the court considered five errors it had identified in the case, among them “the erroneous reliance in sentencing on the aggravating factor that the murders were committed during the course of an act of aggravated child abuse.” Brooks v. State, 918 So.2d 181, 202 (Fla.2005) (emphasis added). Thus, the court only considered harmless error in regard to applying aggravated child abuse as an aggravating factor in sentencing. In its analysis of errors, the Brooks majority does not enumerate as error Brooks’s conviction for first-degree murder because it may have been based on a legally invalid theory of felony murder. Id. The court’s failure to identify that as an error in its cumulative error analysis suggests that the court did not consider it an actual error in Brooks’s conviction, let alone a harmless error.
III. The Plain Language of the Murder Statute Allows Aggravated Child Abuse to Serve as the Predicate for ■ Felony Murder.
Because the dicta in Brooks stating that a single act of aggravated child abuse cannot serve as a predicate crime for felony murder is not controlling, we should adhere to our prior decision in Lewis v. State, 34 So.3d 183 (Fla. 1st DCA 2010). Although dicta from the Florida Supreme Court “may afford welcome guidance ... such passages lack the binding force of precedent.” Sims v. State, 743 So.2d 97, 99 (Fla. 1st DCA 1999); accord Estate of Williams ex rel. Williams v. Tandem Health Care of Fla., Inc., 899 So.2d 369, 374 (’Fla. 1st DCA 2005). In fact, in cases such as this one, where the Legislature has clearly declared a contrary intent, such dicta must be disregarded.
Among the expressly enumerated predicate crimes for felony murder is “aggravated child abuse.” § 784.02(l)(a)2.h., Fla. Stat. The plain language of the murder statute “demonstrates that the Legislature intended that a defendant who kills a child during the perpetration of the crime of aggravated child abuse may be charged and convicted of both aggravated child abuse and felony murder.” Lewis, 34 So.3d at 186-87. This is true even if a single act causes the child’s death. Id. at 187. Based upon the plain language of the statute defining first-degree murder, aggravated child abuse may serve as the predicate crime in a felony murder conviction even where only a single act of aggravated child abuse occurs. Accordingly, Mr. Sturdivant’s convictions for felony murder and aggravated child abuse should *1053 be affirmed; therefore, I respectfully dissent.