WARNER, J.
 

 Appellant, Valerie Kennedy, appeals her convictions and consecutive 30-year sentences for aggravated manslaughter and aggravated child abuse in the death of her three-year-old son. Among other complaints, she claims that the court fundamentally erred in instructing the jury on aggravated child abuse. We agree that the jury instruction deviated from the standard instruction and failed to give a complete definition of the term “maliciously.” The court also gave a legally incorrect response to the jury’s question about the definition of “torture.” Based upon these errors, we reverse the conviction for aggravated child abuse. We affirm, however, the conviction for aggravated manslaughter, finding no error or abuse of discretion on the remaining issues raised.
 

 Valerie Kennedy was indicted on one count of first-degree felony murder and one count of aggravated child abuse, arising out of the death of her three-year-old son, J.M. He died on January 1, 2006, a week after receiving scalding burns in the bathtub of Kennedy’s apartment. The testimony at trial revealed that Kennedy shared an apartment with a friend, Ms. Spencer. On the date of the incident, Christmas day, Kennedy’s husband and other children were at the apartment. J.M. was on the bed with Spencer when Kennedy came to get him for a bath because J.M. had a bowel movement in his pants. Kennedy did not appear angry. After he left, Spencer heard J.M. start crying. Spencer assumed that J.M. was getting a spanking. This went on for a short while. Spencer then heard J.M. scream out in a louder fashion. The scream sounded different from the crying — it was extremely loud. Spencer got up to see what was going on.
 

 Spencer went to the hallway, where Kennedy’s husband and daughter, D.S.,
 
 *379
 
 age seven, were standing outside the bathroom. Spencer saw Kennedy sitting on the edge of the bathtub, while J.M. was standing on the floor outside the bathtub. J.M.’s “feet were really red, like burned, and there was no skin.” Also, J.M.’s legs were pinkish-red and burned. Spencer temporarily went out of the room because she vomited after seeing the burns on J.M’s body.
 

 Kennedy said that J.M. “jumped in the water.” However, Spencer asked her how J.M. got burned on his buttocks and the back of his legs if he jumped in the water. She said nothing in response to the question. Kennedy did not call an ambulance. Instead, she phoned her mother. She did appear upset and kept saying, “Look what the water done to my baby.”
 

 J.M.’s grandmother picked him up and took him to her house. Spencer saw him there the next week, although he was in bed. His burns appeared improved. However, on January 1, 2006, a deputy was called to the house and found J.M. without a pulse and with substantial burns. Although emergency personnel instituted life-saving procedures, J.M. was declared dead upon arrival at the hospital. The emergency room doctor suspected child abuse based upon the burns on the child.
 

 Dr. Gertrude Juste, a forensic pathologist for the Broward County Medical Examiner, performed the autopsy on J.M. Dr. Juste stated that the child suffered second or third degree burns on about 60 to 70 percent of his body surface. The child also had a blunt trauma injury similar to a belt mark. She testified that a child would feel extreme pain with these injuries. Dr. Juste concluded that the manner of death was a homicide caused by an “immersion burn resulting in derangement that led to-the death.”
 

 Dr. Juste testified that the pattern of the burns showed that J.M. was being held against the tub, likely by the top of his torso, while there was hot water in the tub. He did not voluntarily get into the water and then get out when the water became too hot. Dr. Juste opined- that J.M.’s buttocks were held against the surface of the tub and thus were not burned to the same degree as other parts of his body. A person so holding the child would likely have been splashed with the hot water and have known the heat of the water. Water of 138.5 degrees would cause burns within 20 seconds.
 

 During the State’s case-in-chief, defense counsel requested a determination of the competency of P.S., whom the state planned to call as a witness. She was nine years old at the time of trial, and the prosecutor indicated that she was developmentally delayed. Following a lengthy proffer, the court noted that while D.S. had some difficulty articulating her answers, she was nonetheless able-to .do so. The judge further stated that he had no doubt that D.S. understood the difference between the truth and a lie, and found her competent to testify.
 

 After the trial court ruled that D.S. was competent to testify, D.S. testified that J.M. had done a “number two” in his diaper and Kennedy put him in the bathtub and burned him up. J.M. wanted to get out and said it was hot, but Kennedy did not let him get out. When he tried to get out, she whipped him and pushed him down on his shoulder. D.S. stated that J.M. did not get in trouble for soiling his diaper. However, she also testified that Kennedy-hit J.M. with a belt and he cried. In describing J.M.’s body .when he got out of the water, D.S. testified, “Pink, pink. I saw burn.” He was burned all over his body and later died at his grandmother’s house.
 

 
 *380
 
 The state also presented evidence that the owner of the apartments had replaced the heating element in the water heater shortly before the incident. He set the temperature gauge between 145 and 150 degrees, which is higher than normal.
 

 The defense presented Kennedy’s husband who was present on the date when J.M. was burned. He testified that his wife was distraught and stated that she did not know that the water was hot enough to burn.
 

 Dr. John Marraccini, a board certified forensic pathologist, testified for the defense. Dr. Marraccini agreed that J.M.’s injury pattern was consistent with an immersion burning of a child. However, Dr. Marraccini testified that although one should be suspicious that an injury pattern like this was caused by deliberate action, it was inappropriate to jump to that conclusion from the injury pattern alone. There was nothing about the burn pattern itself that would indicate that the injury was definitely a deliberate injury. Dr. Marrac-cini noted that J.M. suffered second and third degree burns, but explained that if the water temperature was at least 138.5 degrees, J.M.’s injuries could have been acquired in less than five seconds.
 

 After hearing all the evidence, the jury found Kennedy guilty of the lesser-included offense of aggravated manslaughter on count one, and guilty of aggravated child abuse as charged in count two. She appeals.
 

 Although Kennedy raises several issues on appeal, we find that one requires reversal. In instructing the jury on aggravated child abuse, the trial court used an outdated definition of “maliciously.” Because the definition reduced the state’s burden of proof, it constituted fundamental error.
 

 Kennedy was charged with aggravated child abuse “by willfully torturing or maliciously punishing J.M., a human being less than 18 years of age, and/or by knowingly or willfully committing Aggravated Battery or Child Abuse causing great bodily harm, to-wit: by causing him to sustain burns over a large portion of his body_” Section 827.03(2), Florida Statutes (2005), defines “aggravated child abuse” as occurring when a person: (a) commits aggravated battery on a child; (b) willfully tortures, maliciously punishes, or willfully and unlawfully cages a child; or (c) knowingly or willfully abuses a child and in so doing causes great bodily harm, permanent disability, or permanent disfigurement to the child. § 827.03(2).
 

 At trial, in giving the instruction on aggravated child abuse the court instructed the jury that: “ ‘Maliciously’ means wrongfully, intentionally, without legal justification or excuse.” However, this was an incomplete definition of the term “maliciously” as it is set forth in the standard jury instruction. The complete definition of “maliciously” is as follows:
 

 “Maliciously” means wrongfully, intentionally, and without legal justification or excuse. Maliciousness may be established by circumstances from which one could conclude that a reasonable parent would not have engaged in the damaging acts toward the child for any valid reason and that the primary purpose of the acts was to cause the victim unjustifiable pain or injury.
 

 Fla. Std. Jury Instr. (Crim.) 16.1 (2005). The trial court left out the explanatory second sentence of the instruction. The second sentence clarifies the type of circumstances which may establish maliciousness which require “that the primary purpose of the acts was to cause the victim unjustifiable pain or injury.” This language suggests that maliciousness would
 
 not
 
 be established if the state failed to show that the purpose of the act was to
 
 *381
 
 inflict pain. Without this missing language, the jury was left to consider the issue of maliciousness without any direction. The instruction reduced the state’s burden of proof by failing to require the jury to find that the primary purpose of the act was to cause unjustifiable pain.
 

 Although Kennedy did not object to the definition of “maliciously,” the failure to adequately definé “maliciously” constitutes fundamental error.
 
 See Reed v. State,
 
 837 So.2d 366 (Fla.2002). In
 
 Reed,
 
 the Florida Supreme Court held that the standard jury instruction for aggravated child abuse constituted fundamental error because the instruction inaccurately defined the disputed element of malice. The trial court gave Reed’s jury the standard instruction on aggravated child abuse, which at that time defined maliciously as “wrongfully, intentionally, without legal justification or excuse.” The court found that this definition was erroneous. The correct definition was the same definition as malice, which is defined as “ill will, hatred, spite, an evil intent.”
 
 See State v. Gaylord,
 
 356 So.2d 313, 314 (Fla.1978). Thus, the
 
 Reed
 
 court reasoned that the inaccurate definition reduced the state’s burden of proof on an essential element of the offense charged, by permitting a jury to return a guilty verdict based upon a finding of only legal or “technical” malice.
 
 Reed,
 
 837 So.2d at 368-69.
 

 Reed
 
 involved an early version of the aggravated abuse statute which did not define “maliciously.” After
 
 Reed,
 
 the legislature amended section 827.03 and defined the term “maliciously” as it now appears in the current standard jury instruction.
 
 See
 
 § 827.03(4), Fla. Stat. (2005). Nonetheless, under
 
 Reed,
 
 fundamental error occurs where a jury instruction incorrectly defines a disputed element of the crime in such a way as to reduce the state’s burden of proof. As we noted before, by failing to .include the second sentence of the standard jury instruction, the state’s burden of proof was reduced. Thus, fundamental error occurred.
 

 Apart from the issue concerning the incomplete definition of “maliciously,” Kennedy also maintains that the error was compounded when, over defense objection, the trial court told the jury that it could substitute “omission or neglect” for torture in the aggravated child abuse instructions.
 
 [1]
 
 The written jury instructions in this case stated that “torture” means “every act, omission, or neglect by which unnecessary or unjustifiable pain or suffering is caused.”- In particular, during deliberations the jury asked: “Can omission or neglect be substituted for torture under aggravated child abuse, are there degrees of neglect, and what is the definition of intentional?” In response, over defense objection, the court answered “yes” to the first part of the question.
 
 [2]
 
 However, the court otherwise told the jury to rely on the jury instructions and proceed accordingly. The court also reiterated that “when I tell something about a specific instruction, you
 
 *382
 
 should still read all the instructions as a whole.”
 

 The trial court’s explanation to the jury was misleading. If the jury simply substituted “omission or neglect” for “torture” in the aggravated child abuse instruction, the replaced instruction would read: “[Kennedy] willfully [omitted or neglected], maliciously punished, and/or willfully and unlawfully caged J.M.” This is not correct, however, because under the definition of torture provided in the written instructions, the “act, omission, or neglect” must cause “unnecessary or unjustifiable pain or suffering.” Thus, again the state’s burden of proof was reduced by the trial court’s oral instruction.
 

 For these reasons, we reverse Kennedy’s conviction for aggravated child abuse. Kennedy contends that her conviction for aggravated manslaughter should also be reversed as a result. We disagree. Unlike the charge of felony murder (which the jury rejected), the crime of aggravated manslaughter did not depend upon the commission of an underlying crime — in this case, aggravated child abuse. Instead, to prove the crime of aggravated manslaughter, the jury needed only to conclude: 1) J.M. was dead; 2) the death of J.M. was caused by the intentional act or culpable negligence of Kennedy; and 3) J.M. was under 18 years of age.
 
 [3]
 
 Thus, the erroneous instruction on aggravated child abuse did not affect the validity of the conviction for aggravated manslaughter.
 

 Kennedy also raises several other issues on appeal, which we comment on briefly. She first claims that the court erred in admitting the testimony of her daughter D.S., a developmentally disabled child, to testify. As noted above, D.S. was present in the bathroom when J.M. was burned. Kennedy claims that the child was not competent to testify. A trial court’s ruling on the competency of a witness to testify is reviewed for an abuse of discretion.
 
 See Lloyd v. State,
 
 524 So.2d 396, 400 (Fla.1988). “A decision upon the competency of a child to testify is one peculiarly within the discretion of the trial judge because the evidence of intelligence, ability to recall, relate and , to appreciate the nature and obligations of an oath are not fully portrayed by a bare record.”
 
 Fernandez v. State,
 
 328 So.2d 508, 509 (Fla. 3d DCA 1976). We find that to be the case here. After careful review of the record, we cannot say that the trial court abused its discretion in finding the child competent to testify. Because the issue is so close, and the passage of time may have impaired this child’s ability to testify, should her testimony again be required in any retrial, the court must make a renewed finding of competency. Our finding that the trial court did not abuse its discretion in this trial should not be considered as establishing D.S.’s competency in further proceedings.
 

 Kennedy also contends that the prosecutor’s closing argument, to which no objection was made at trial, was riddled with misstatements of fact and law such that it constituted fundamental error. Improper comments rise to the level of fundamental error only where the error “reaches down into the validity of the trial itself to the extent that a verdict of guilty could . not have been obtained without the assistance of the alleged error.”
 
 Brooks v. State,
 
 762 So.2d 879, 899 (Fla.2000). In order to require a new trial based on improper prosecutorial comments, the prosecutor’s- comments must either deprive
 
 *383
 
 the defendant of a fair and impartial trial, materially contribute to the conviction, be so harmful or fundamentally tainted as to require a new trial, or be so inflammatory that they might have influenced the jury to reach a more severe verdict than that it would have otherwise.
 
 Anderson v. State,
 
 863 So.2d 169,187 (Fla.2003).
 

 We have reviewed the prosecutor’s closing argument against the testimony at trial. While some statements border on being misstatements of fact, the prosecutor did have some evidentiary basis for most of them. And while the prosecutor did make some misstatements of law, they dealt with the requirements for aggravated child abuse. We have already concluded that reversal of that conviction is necessary because of the erroneous jury instruction. The prosecutor used inflammatory language in some places during the argument, which she should not have used, and we condemn. However, we cannot conclude that the jury was swayed to reach a more severe verdict than it would have otherwise rendered. Kennedy was charged with felony murder, and the jury found her guilty of aggravated manslaughter, the least severe lesser-included homicide offense of felony murder that was available to the jury on the verdict form. We cannot conclude that the comments constituted fundamental error.
 

 In the proceedings at trial, Kennedy moved to dismiss the indictment based upon
 
 Brooks v. State,
 
 918 So.2d 181 (Fla.2005), which she cites for the proposition that a single act of aggravated child abuse causing the death of the child merges into a charge of felony murder. Although she was acquitted of the felony murder charge, Kennedy now argues on appeal that under
 
 Brooks
 
 her conviction for aggravated child abuse merged with her conviction for aggravated manslaughter. In
 
 Brooks,
 
 the court treated the single act of stabbing which caused the death of an infant child, and which constituted the aggravated child abuse, as merging with the homicide.
 
 Id.
 
 at 198-99. At least one court has criticized
 
 Brooks,
 
 and suggested that its comments constitute dicta.
 
 See Lewis v. State,
 
 34 So.3d 183, 186 (Fla. 1st DCA 2010),
 
 rev. granted,
 
 53 So.3d 230 (Fla.2011). We need not decide whether we agree with the
 
 Lewis
 
 panel’s conclusion that the pertinent language in
 
 Brooks
 
 was dicta. In
 
 Lewis,
 
 the court concluded that, even assuming the language of
 
 Brooks
 
 was binding, a mother’s act of holding her child underwater in a swimming pool long enough to produce unconsciousness and death did not constitute a single act under
 
 Brooks.
 
 Similarly, in this case, the evidence showed that the child struggled to get out of the hot bathwater and that the mother pushed the child into the water. We think
 
 Lewis
 
 is more analogous to the facts of this case than
 
 Brooks.
 
 We therefore conclude that the offenses did not merge, as there was evidence of more than a single act of abuse.
 

 Finally, we conclude that Kennedy’s challenge to the trial court’s denial of her motion for judgment of acquittal lacks merit.
 

 For the foregoing reasons, we reverse Kennedy’s conviction for aggravated child abuse and remand for a new trial. We affirm her conviction for aggravated manslaughter.
 

 STEVENSON and GERBER, JJ„ concur.
 

 [1]
 

 . Although not specifically raised as an issue on appeal, the trial court instructed the juiy with an outdated definition of torture.
 
 See Cox v. State,
 
 1 So.3d 1220, 1223 (Fla. 2d DCA 2009) ("Previous versions of section 827.01, Florida Statutes, defined torture for purposes of aggravated child abuse as 'every act, omission, or neglect whereby unnecessary or unjustifiable pain or suffering is caused.’ However, this definition was deleted when chapter 827 was extensively amended in 1996.”) (citation omitted).
 

 [2]
 

 . The court’s full response was: “Question: Can an omission or neglect be substituted for torture under aggravated child abuse? Again, I would direct your attention to the definition of aggravated child abuse, but the short answer is yes.”
 

 [3]
 

 . The reason the manslaughter is deemed "aggravated” under the statute is simply because the child was under the age of 18.
 
 See
 
 § 782.07(3), Fla. Stat. (2005). '