# Supreme Court of Florida

No. SC2023-0338

**MATTHEW LEE CAYLOR,**
Appellant,

vs.

**STATE OF FLORIDA,**
Appellee.

January 30, 2025

FRANCIS, J.

Matthew Lee Caylor appeals his sentence of death imposed following a new penalty phase. As explained below, we affirm.[1]

## I. BACKGROUND

A jury convicted Caylor of the 2008 first-degree murder, sexual battery involving great physical force, and aggravated child abuse of thirteen-year-old Melinda Hinson. *Caylor v. State* (*Caylor I*), 78 So. 3d 482, 486 (Fla. 2011). Caylor murdered her at the Valu-Lodge Motel in Panama City, where she had been living with her family.

---

1. We have jurisdiction. *See* art. V, § 3(b)(1), Fla. Const.

Caylor, who fled felony probation in Georgia for molesting a fourteen-year-old girl, was there selling drugs from his room at the same motel.

Melinda went missing on the evening of July 8. Two days later, her lifeless body was discovered under Caylor's bed.

Caylor confessed to having sex with Melinda, then murdering her to avoid arrest for fleeing probation. And because he felt he had been falsely accused of the Georgia molestation, when Melinda knocked on his door to ask for a cigarette on July 8, he decided to make it all "worth it." *Id.* at 488. In his words, "[i]f I'm going to be in trouble for having sex with this girl being in my room, I might as well have sex with this girl." *Id.* (alteration in original).

During the sexual encounter, he choked Melinda because of the hate and rage he felt from his Georgia conviction, and because he had a recent break-up. Melinda fought him, but he "just wanted her to go away." *Id.* at 489. At some point during the attack, he and Melinda rolled onto the floor, where he unplugged the phone cord and strangled her with it. Once she stopped moving, he lifted his mattress, put Melinda and her clothes under it, and plugged the phone back in. The physical and DNA evidence collected from

- 2 -

Caylor's hotel room and Melinda's body corroborated Caylor's confession.

A jury convicted Caylor of three counts including first-degree murder. By a vote of eight to four, the penalty phase jury recommended the death penalty.

We affirmed the convictions and sentences on direct appeal in *Caylor I, id.* at 486, but based on the jury's nonunanimous penalty phase recommendation, granted a new penalty phase pursuant to *Hurst.*[2] *Caylor v. State* (*Caylor II*), 218 So. 3d 416, 425 (Fla. 2017).

### *New Penalty Phase*

Caylor's penalty phase hearing was set for November 2021. But starting in late 2020, he began vacillating between filing motions and letters waiving mitigation evidence, waiving the jury, or waiving his presence, only to later withdraw these motions.[3]

---

2. *Hurst v. State*, 202 So. 3d 40 (Fla. 2016), *receded from in part by State v. Poole*, 297 So. 3d 487 (Fla. 2020).

3. Caylor filed at least three pre-penalty phase motions and at least two letters: (1) October 2020 motion to waive the penalty phase jury and his presence; (2) May 2021 motion to withdraw the October 2020 waiver and discharge counsel; (3) June 2021 motion to withdraw his request to discharge counsel but requesting reinstatement of his October 2020 motion to waive the penalty phase jury and his presence; and (4) & (5) June 2021 and August

Though he would equivocate, Caylor ultimately explained that he was waiving his right to a jury primarily because he wanted to keep his promise to the victim's mother that he would spare her family a lengthy sentencing process. His later-added request to waive mitigation was to spare his own family.

In August 2021, following a full colloquy,[4] the trial court accepted Caylor's waiver of his rights to a jury, to present mitigation, and to be physically or virtually present, and warned him he could no longer change his mind.

Three months later, a new bench penalty phase was conducted. Despite waiving his presence, the trial court nonetheless permitted Caylor to be virtually present. During the proceeding, the State announced the victim's mother had died. Despite Caylor's current argument that his decision to waive the

---

2021 letters requesting a hearing and indicating his desire to waive mitigation. At the August 2021 hearing, Caylor confirmed he wanted to waive mitigation.

4. During the colloquy, Caylor stated he had been diagnosed both as having a personality disorder and bipolar II but had not taken medication for several years. The court asked Caylor's attorney about his competency to waive, and counsel responded that he had no concerns.

jury was due almost exclusively to wanting to spare the victim's mother, after the State disclosed her death, neither Caylor nor his attorney raised any concerns. Thereafter, a victim advocate read impact statements from the victim's mother and other family members.

After reaffirming that he still wanted to waive his rights to a jury and to present mitigation evidence, the penalty phase proceeded.

The State's case for the death penalty was based largely on the transcripts of the prior penalty phase proceeding, at which Caylor stipulated to his Georgia conviction after his probation officer testified that Caylor was on felony probation in Georgia in 2008.

And despite his continued waiver of mitigation, at the State's request, the trial court took judicial notice of the transcripts of the prior penalty phase and *Spencer*[5] hearings, where mitigation was presented. That mitigation evidence was summarized in *Caylor I* as follows:

> The defense called four witnesses during the penalty phase. The appellant's parents, Kimberly and Kerry Caylor, testified that they were both addicted to

---

5. *Spencer v. State*, 615 So. 2d 688 (Fla. 1993).

amphetamines while the appellant was a child and that for a time the family had no money and lived in a trailer with no power. Both parents testified that the appellant had an abusive relationship with his father, began abusing drugs at a young age, and suffered from emotional problems. A third defense witness testified that he worked with the appellant as a mechanic in Jasper, Georgia, and described the appellant's drug problems. The final defense witness was a veterinarian who testified that Matthew Caylor had worked in the kennel area of his office for several months. He stated that Caylor was a good employee and treated the animals well. . . .

The trial court held a *Spencer* hearing on November 18, 2009. Caylor testified in his own defense and described the events preceding the murder. He said that contrary to his initial statement to the police, he had used a large amount of drugs on the day of the homicide. He stated that he decided to have sex with Melinda because he was angry about the fact that he had been on probation for eight years for an offense he did not commit, and that he was angry because he found himself in a similar situation with a thirteen-year-old girl. He said that he did not rape Melinda and that he was remorseful for killing her.

78 So. 3d at 490.

The State also referred to a forthcoming report from Dr. Gregory Prichard, a psychologist who testified at Caylor's prior penalty phase. Dr. Prichard's report summarized Caylor's voluminous mental health records from the Florida Department of Corrections. The trial court explained that it would consider the

report at the future *Spencer* hearing. After the State rested, due to Caylor's waiver, the defense rested without presenting mitigation.

During closing arguments, the State sought three aggravators: (1) the felony probation aggravator based on Caylor's stipulated-to prior Georgia conviction for felony child molestation; (2) the felony murder aggravator based on his sexual battery conviction; and (3) the heinous, atrocious, or cruel aggravator (HAC) based on the rape and strangulation of the young victim. The State also addressed Caylor's prior mitigation evidence, which showed that he had a difficult childhood, abused drugs from an early age, demonstrated compassion at his veterinary position, and was an effective employee at a garage job. Defense counsel made a brief closing, generally arguing against imposition of the death penalty.

### *Post-Penalty Phase Motion to Withdraw Waivers*

A full four months after the penalty phase hearing, Caylor, once again, moved to withdraw his prior waivers of his penalty phase jury, his physical presence, and mitigation. The State vehemently objected, citing among other reasons, that the attempted withdrawal was an untimely delay tactic.

So instead of holding the scheduled *Spencer* hearing, the trial court heard Caylor's motion. There, he testified that his waivers should be withdrawn because the reason for the waivers was gone: he had only waived his rights to honor his promise to the victim's mother not to put her through a lengthy proceeding. He admitted on cross-examination that he learned of the mother's death four months earlier, at the penalty phase hearing, but claimed he did not raise the issue sooner because he was surprised by the news and believed his attorney should have raised it.

The State renewed its objection to Caylor's motion to the extent he sought to withdraw his jury waiver. However, the State did not object to a limited withdrawal of Caylor's waiver of his physical presence and presentation of mitigation evidence at the upcoming *Spencer* hearing, so long as the presentation of evidence did not delay the proceedings.

The trial court agreed with the State and, in its order denying Caylor's motion to withdraw the waiver of the penalty phase jury, explained that Caylor's motion filed four months after the penalty phase was in bad faith to cause a delay, as further shown by Caylor's history of waffling on his earlier waivers. The court also

rejected Caylor's argument that the death of the victim's mother constituted good cause to withdraw the waivers because he made that promise to the whole family, not just the mother. However, the court permitted Caylor to be present and present mitigation evidence.

## Spencer *Hearing*

At the *Spencer* hearing, at which Caylor was physically present and testified, the defense presented a mitigation case focused on establishing that Caylor was suffering from extreme mental or emotional disturbance at the time he killed Melinda. As support, the defense called eight witnesses[6] who testified that Caylor may have been a victim of sexual abuse as a child and has significant mental health issues, including possible Post-Traumatic Stress Disorder (PTSD), bipolar disorder, and substance abuse disorder.

---

6. The defense presented four lay witnesses: (1) Kimberly Caylor, Caylor's mother; (2) Kerry Caylor, Caylor's father; (3) Sara Tokarsky, Caylor's friend; and (4) Devin McCloud, Caylor's son. The defense presented three expert witnesses: (1) Dr. Jethro Toomer, a forensic psychologist; (2) Dr. Daniel Buffington, a pharmacologist; and (3) Ron McAndrew, a former warden at Florida State Prison who testified Caylor had exhibited "no violence throughout his incarceration." Caylor also testified.

The defense also presented three letters in support of Caylor,[7] his disciplinary records while on death row, the original 2009 eight-to-four jury recommendation, and a written sentencing order from a similar capital case.

Both sides presented closing arguments, with the State arguing that it had proven three aggravators: (1) felony probation, (2) felony murder, and (3) HAC.

*Sentencing Hearing and Order*

At the sentencing hearing, the trial court entered a sentencing order imposing the death penalty. The court found all three aggravating factors had been proven: (1) the felony probation aggravator based on Caylor's prior Georgia conviction for felony child molestation; (2) the felony murder aggravator based on the sexual battery conviction; and (3) the HAC aggravator based on the rape and strangulation of the young victim, first by hand and then with a telephone cord. The court gave all three great weight.

---

7. These letters were authored by: (1) Kristi Brock, the mother of Caylor's son; (2) Eva Tracy Ray, whose son was also on death row; and (3) Barbara Shelton, who knew Caylor for 20 years.

The trial court also found one statutory mitigating circumstance, extreme mental or emotional disturbance, to which it gave medium weight based on testimony regarding Caylor's possible sexual abuse as a child and possible diagnosis of PTSD. The court also found seven nonstatutory mitigating circumstances: (1) learning difficulties in school (little weight); (2) dysfunctional family (medium weight); (3) good employee/good with animals (little weight); (4) good father when not on drugs (little weight); (5) remorse based on his taking responsibility (little weight); (6) drug use (little weight); and (7) good prison behavior (little weight).

The trial court ultimately held that the aggravators far outweighed the mitigators and sentenced Caylor to death. This appeal followed.

## II. ANALYSIS

Caylor raises three issues, two of which relate to his jury and mitigation waivers, and one of which relates to the aggravating factors. We affirm on all issues.

### *Penalty Phase Waivers & Withdrawals*

First, Caylor claims the trial court abused its discretion by denying his motion to withdraw his jury waiver following his penalty

phase as untimely filed in bad faith for the purpose of delay. We disagree. The trial court's findings that Caylor's post-penalty phase request was made in bad faith and for the purpose of obtaining a delay are supported by the record evidence of Caylor's conduct before the penalty phase where, for nearly a year, he repeatedly waived his rights, only to change his mind and seek withdrawal. And most significantly, these findings are supported by Caylor's four-month delay in seeking the withdrawal of his jury waiver *after* the bench penalty phase. Because there is substantial evidence supporting the trial court's findings, we conclude the trial court did not abuse its discretion by denying Caylor's request to withdraw his waiver of the penalty phase jury.

Caylor further claims the trial court erred in refusing to grant his post-penalty phase withdrawal request because his August 2021 jury waiver was based on misinformation, citing *Figueroa-Sanabria v. State*, 366 So. 3d 1035, 1054-55 (Fla. 2023). Caylor argues that the alleged "misinformation" was that he did not know the victim's mother died until the bench penalty phase, and therefore, his August 2021 waiver was made unknowingly and

involuntarily because he only waived the jury to spare the victim's mother a painful sentencing process.

Caylor's argument is unconvincing because the death of the victim's mother cannot retroactively negate Caylor's understanding of the nature of *his* right to have a penalty phase jury at the time he waived it. *See generally United States v. Ruiz,* 536 U.S. 622, 629 (2002) ("[T]he law ordinarily considers a waiver knowing, intelligent, and sufficiently aware ***if the defendant fully understands the nature of the right*** and how it would likely apply *in general* in the circumstances . . . ." (first emphasis added)). Caylor waived his right to a jury after a full colloquy—and after a year of waffling—demonstrating that he fully understood the nature of the right he was waiving. Caylor's internal motivation about the victim's mother and ignorance of her death does not go to the nature of, nor his understanding about, *his* right to a jury.

Further, unlike *Figueroa-Sanabria,* Caylor's waiver was not based on a mistake caused by any trial court misstatement. 366 So. 3d at 1054-55 (holding that a trial court's misinformation was constitutionally offensive because it misstated the law, forcing a defendant to either present mitigation evidence or decline the

assistance of counsel for the penalty phase).  The court here made no statement at all about the victim's mother's death.  Thus, there was no "misinformation" that could be constitutionally offensive.

Second, Caylor claims the trial court erred by denying his request to withdraw his mitigation waiver, again, arguing the waiver was not knowing and voluntary in light of the death of the victim's mother.  As explained above, Caylor's desire to spare the victim's mother is not constitutionally relevant to his understanding of his right to waive mitigation.  Further, Caylor presented mitigation evidence during the *Spencer* hearing, including testimony from eight witnesses (including his own), three letters from family and friends, his disciplinary records, the prior nonunanimous jury recommendation, a sentencing order from another case, and closing argument.  Therefore, he is not entitled to relief on this claim.

### *Aggravating Factors*

Finally, we reject Caylor's claim that the State must prove the aggravating factors *outweigh* the mitigating circumstances beyond a reasonable doubt.  We recently reaffirmed our view that proof beyond a reasonable doubt is not required in determining the relative weight of the aggravators and mitigators because these

- 14 -

sentencing determinations are neither elements of an offense nor their functional equivalent. *See Wells v. State*, 364 So. 3d 1005, 1014-15 (Fla.), *cert. denied*, 144 S. Ct. 385 (2023) (holding "that neither the sufficiency nor weighing determination [called for by section 921.141, Florida Statutes] is subject to the reasonable-doubt standard"). We see no reason to recede from our view and, therefore, accord Caylor no relief on this claim.

### III. CONCLUSION

Because none of Caylor's claims warrant relief, we affirm his death sentence.

It is so ordered.

MUÑIZ, C.J., and CANADY, COURIEL, GROSSHANS, and SASSO, JJ., concur.
LABARGA, J., concurs in result with an opinion.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION AND, IF FILED, DETERMINED.

LABARGA, J., concurring in result.

I fully agree with the majority's decision to affirm Caylor's death sentence. I concur in result solely to reaffirm my dissent in *Lawrence v. State*, 308 So. 3d 544 (Fla. 2020), wherein this Court

- 15 -

abandoned this Court's decades-long practice of comparative proportionality review in the direct appeals of sentences of death.

An Appeal from the Circuit Court in and for Bay County,
    Christopher N. Patterson, Judge
    Case No. 032008CF002244XXAXMX

Jessica J. Yeary, Public Defender, and Barbara J. Busharis, Assistant Public Defender, Second Judicial Circuit, Tallahassee, Florida,

    for Appellant

John M. Guard, Acting Attorney General, and Charmaine M. Millsaps, Senior Assistant Attorney General, Tallahassee, Florida,

    for Appellee